# United States Court of Appeals
## For the First Circuit

No. 16-2112

NATIONAL FEDERATION OF THE BLIND, on behalf of their members and
themselves; MIKA PYYHKALA, on behalf of herself and all others
similarly situated; LISA IRVING, on behalf of herself and all
others similarly situated; JEANINE KAY LINEBACK, on behalf of
herself and all others similarly situated; ARTHUR JACOBS, on
behalf of himself and all others similarly situated,

Plaintiffs, Appellees,

MARK CADIGAN, on behalf of himself and all others similarly
situated; HEATHER ALBRIGHT, on behalf of herself and all others
similarly situated,

Plaintiffs,

v.

THE CONTAINER STORE, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before
Thompson, Circuit Judge,
Souter, Associate Justice,[*]
And Selya, Circuit Judge.

Gregory F. Hurley, with whom Michael J. Chilleen and Sheppard,
Mulin, Richter & Hampton LLP were on brief, for Appellants.

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Karla Gilbride, with whom Jeremy Y. Weltman, Kerstein, Coren, Lichtenstein LLP, Jana Eisinger, Law Office of Jana Eisinger, Dani Zylberberg, Public Justice, P.C., Scott C. LaBarre, LaBarre Law Offices, P.C., Timonthy Elder, and TRE Legal Practice were on brief, for Appellees.

September 14, 2018

**THOMPSON**, **Circuit Judge**. Appellees/Plaintiffs, the National Federation of the Blind ("NFB"), Mika Pyyhkala, Lisa Irving, Jeanine Kay Lineback, and Arthur Jacobs ("individual plaintiffs"),[1] filed a complaint in district court against Appellant/Defendant, the Container Store, Inc. ("Container Store"), alleging several violations of federal and state discrimination laws. The allegations stem from the Container Store's failure to utilize at the time tactile keypads on its point-of-sale ("POS") devices in its stores that could be independently used by customers who are blind. Citing an arbitration provision in the terms and conditions of a loyalty program of which the individual plaintiffs were members, the Container Store sought to stay the proceedings in district court and compel arbitration.[2] The district court denied the motion and the Container Store appealed to this court. Finding no error, we affirm.

---

[1] Two other named plaintiffs, Mark Cadigan and Heather Albright, are not parties to this appeal. Defendant never sought to have their claims moved to arbitration because they were not enrolled in the loyalty program (where apparently the arbitration provision was at play).

[2] The Container Store also sought to enforce a class action prohibition found in the terms and conditions of the loyalty program; however, neither party made specific arguments regarding this provision either to the district court or to us. Therefore, we consider only its motion to compel arbitration and treat as waived for purposes of this appeal its attempt to enforce any class action waiver entered into by Plaintiffs.

## BACKGROUND

### A. The Container Store

The Container Store is devoted to selling storage and organization products. At the time this litigation commenced in 2015, it operated roughly seventy stores in the United States.[3] The Container Store offers a loyalty program to its customers, known as the POP! Program, where customers are given a card to use during their purchases to accumulate redeemable points. Membership offers customers several perks, including discount coupons and special deals. The loyalty program also gives customers additional benefits including the ability to get full refunds for purchased products without a receipt.

Enrollment in the loyalty program can be done in-store or online; for in-store enrollment, customers need to use the Container Store's POS devices to enter their contact information -- specifically, phone numbers and email addresses. Customers must also register their consent to the terms and conditions of the program by checking a box that appears on the touch screen POS device indicating agreement. Customers wanting to receive a copy of the terms and conditions on the spot may do so only upon request to the store associate facilitating the enrollment process. Pertinent here, the terms and conditions of the loyalty program

---

[3] These include stores in the states Plaintiffs reside: 3 in Massachusetts, 11 in California, 4 in New York, and 12 in Texas.

contain a mandatory arbitration and class action waiver provision,

found on the fourth page, which provides the following:

> You agree that The Container Store and you
> will resolve any disputes through binding and
> final arbitration instead of through court
> proceedings.  YOU HEREBY WAIVE ANY RIGHT TO A
> JURY TRIAL OF ANY DISPUTE YOU HAVE WITH THE
> CONTAINER STORE. NEITHER YOU NOR THE CONTAINER
> STORE MAY BRING A CLAIM AGAINST THE OTHER AS
> A CLASS ACTION, REPRESENTATIVE ACTION, OR
> PRIVATE ATTORNEY GENERAL ACTION.  NEITHER YOU
> NOR THE CONTAINER STORE MAY ACT AS A PRIVATE
> ATTORNEY GENERAL OR CLASS REPRESENTATIVE, NOR
> PARTICIPATE AS A MEMBER OF A CLASS OF
> CLAIMANTS WITH RESPECT TO ANY DISPUTE OR CLAIM
> BETWEEN US.  These POP! Program terms evidence
> a transaction in interstate commerce, and thus
> the arbitration will be subject to the Federal
> Arbitration Act . . . .

> In the event of any dispute concerning the
> POP! Program or these terms, the parties
> unconditionally and irrevocably agree the
> dispute will be resolved by arbitration . . .
> exclusively in Dallas, Texas, in accordance
> with the rules of the American Arbitration
> Association.  The arbitration will be heard
> and determined by a single arbitrator.  The
> arbitrator's decision will be final and
> binding upon the parties and may be enforced
> in any court of competent jurisdiction.  The
> prevailing party will be entitled to recover
> its attorneys' fees and arbitration costs from
> the other party. . . .

Once enrollment is complete, a "welcome" email is sent

to the new member also containing an electronic link to the terms

and conditions.  Thereafter, members are sent monthly promotional

emails as part of the loyalty program that likewise contain a link

to the terms and conditions.  To register individual purchases to

their loyalty card, customers must provide their phone number or email address to the store clerk at the time of each purchase.

## B. The Plaintiffs

Founded in 1940, the NFB is the largest and oldest advocacy organization for individuals who are blind. It initiated this suit against the Container Store on behalf of (and in addition to) the individual plaintiffs who are blind persons who shop at the Container Store (collectively, "Plaintiffs"). Plaintiffs allege they cannot enroll or participate in the loyalty program without having to verbally disclose their email addresses or phone numbers to the sales associate (and presumably, also to those standing nearby who can overhear) because of the Container Store's exclusive use of visual touch screen interfaces, without tactile keypads on its POS devices.[4] Plaintiffs further allege that blind persons are unable to enter their personal identification numbers ("PINs") when making certain debit and credit card purchases due to the machine's inaccessibility to them.

Pyyhkala, Irving, and Jacobs ("the in-store plaintiffs") each enrolled in the loyalty program while at the Container Store with the assistance of a sales associate. According to the in-store plaintiffs, none were presented with the terms and conditions

---

[4] Plaintiffs allege that they notified the Container Store of this problem prior to filing suit, but that the Container Store failed to address it.

of the loyalty program, including the mandatory arbitration provision and class action waiver, nor did they agree to those terms.

Meanwhile, Plaintiff Lineback, who had originally attempted to enroll in the loyalty program at her local store but was unable to do so because she could not use the POS device,[5] enrolled from her computer at her home. As part of her at-home enrollment process, Lineback had to first check a box to the immediate left of "I agree to the POP! terms and conditions" (hyperlinked to the terms and conditions). While it is undisputed that she enrolled, Lineback does not recall being presented with or reviewing any arbitration agreement.

### C. This Litigation

As a class action in September 2015, Plaintiffs filed a twelve-count first amended complaint[6] alleging a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

---

[5] At that time, an Accessibility Overlay, which contained tactical portions and was used by the Container Store in an attempt to enable visually impaired customers to use the POS device, was being utilized. The overlay, however, did not make the POS device discernable to Lineback.

[6] Plaintiffs later filed a second amended complaint following the decision on Defendant's motion, but we cite the first amended complaint given it was the operative complaint when the motion was decided.

§ 12181, several violations of Massachusetts, New York, Texas, and California discrimination laws,[7] and seeking declaratory relief.

The complaint alleges that the Container Store "is knowingly denying blind individuals throughout the United States equal access to the goods and services it provides to its sighted customers who shop at its retail store." Specifically, the complaint highlights that because of the Container Store's use of a visual, touch screen interface on its POS device at many of its locations, blind customers are unable to: (1) independently pay for merchandise at the Container Store with a debit or credit card requiring a PIN; (2) enroll in the loyalty program; or (3) register each purchase they make to their loyalty program membership. Instead, and unlike sighted customers, Plaintiffs have to verbally disclose this private information to the store clerk (and presumably anyone who is nearby and can hear), thus subjecting them to privacy concerns every time they shop at the Container Store.

---

[7] These allegations include violations of the following: the Massachusetts Public Accommodations Act, Mass. Gen. Law ch. 272, § 98; the Massachusetts Equal Rights Act, Mass. Gen. Law ch. 93, § 103; the Consumer Protection Act, Mass. Gen. Law ch. 93A, § 9; the Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq.; the California Disabled Persons Act, Cal. Civ. Code §§ 54-54.3; the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; the New York Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; the New York Civil Rights Law, N.Y. Civ. Rights Law §§ 40 et seq.; the New York City Human Rights Law, NYC Admin. Code §8-107; and the Texas Human Resources Code, Tex. Hum. Res. Code § 121.001, et seq.

In response to the amended complaint, the Container Store, citing the relevant provision in the terms and conditions of the loyalty program, filed a motion to compel arbitration, enforce class action waivers, and to stay action. Attached to and in support of its motion, Defendant submitted an affidavit of Joan Manson, its Vice President of Loss Prevention, Payroll, Benefits and Legal, in which she outlined both the at-home and in-store process of enrolling in the loyalty program. Plaintiffs objected to the motion on the basis that the Container Store had "fail[ed] to demonstrate that any enforceable contract to arbitrate was ever formed." Plaintiffs also claimed that certain terms in the loyalty program (specifically, the change-in-terms provision) were illusory and that the arbitration provision was unconscionable.

A magistrate judge filed a report and recommendation on the Container Store's motion, which denied its requested relief and the Container Store objected to the report and recommendation before the district judge. In support of its objection, the Container Store submitted a new piece of evidence: excerpts from a training manual for Container Store employees indicating they were trained to "[a]llow the customer the opportunity to review [the terms and conditions on the POS device/screen] and then ask them to press the I Accept button," and that, "[i]n the event the customer cannot enter their information on the tablet and would like to enroll in [the loyalty program], at the customer's request,

- 9 -

you can turn the tablet around and enter the information on the customer's behalf." The Container Store did not, however, present any evidence that the store clerk in the relevant transactions did in fact read the terms and conditions to Plaintiffs, nor that the in-store plaintiffs were made aware that terms and conditions existed.[8]

In a written decision adopting the magistrate judge's report and recommendation, the district court denied Defendant's motion to compel arbitration, enforce class waivers, and stay action -- concluding that this one piece of new evidence did not change its agreement with the magistrate judge's recommendation. First, it held that pursuant to the requirements of the ADA, the Container Store did not provide Plaintiffs the "minimal level of notice" that by enrolling in the loyalty program they were agreeing to waive their rights to pursue any future ADA claim in court -- thus, any arbitration provision was not enforceable as to Plaintiffs' ADA claims. Second, as to Plaintiffs' state-law claims, the district court found (contrary to the Container Store's position[9]) that it was the proper forum to decide whether

---

[8] A hearing on the pending motion was held on March 9, 2016 but a transcript was not provided to this court.

[9] We'll talk more about this later -- the Container Store insisted then (and does again now) that the arbitrator should decide the merits of Plaintiffs' "we-never-agreed-to-arbitrate" defense.

- 10 -

Plaintiffs had in fact entered into an agreement to arbitrate any future dispute with the Container Store. It concluded that pursuant to Massachusetts law no contract to arbitrate was formed between the Container Store and any of the in-store plaintiffs primarily because there was no evidence that the store clerk informed them of the existence of any terms and conditions applicable to the loyalty program. It rejected the Container Store's argument that the in-store plaintiffs were on constructive notice of the terms. In a footnote, the district court likewise rejected the Container Store's "suggestion" at oral argument that by continuing enrollment in the loyalty program, in-store plaintiffs had ratified the arbitration agreement -- therefore rendering it enforceable. In doing so, it highlighted that the Container Store had wholly failed to present any evidence that the in-store plaintiffs reaped any benefits of the loyalty program.

Lastly, the district court found that Lineback -- unlike the in-store plaintiffs -- had entered into an agreement when she enrolled in the loyalty program at home and was "bound by the [l]oyalty [p]rogram's terms and conditions." It concluded, however, that she too should not be compelled to arbitrate any of her claims because pursuant to Texas law[10] the agreement to arbitrate was illusory as to all Plaintiffs and therefore

_____

[10] The terms and conditions of the loyalty program provide that Texas law applies to any dispute between the parties.

- 11 -

unenforceable (because it contained a change-in-term provision that allowed the Container Store to unilaterally change the terms of the agreement and was silent on that term's retroactive application). It also found that the agreement was unconscionable with respect to the in-store plaintiffs (but not Lineback).

Accordingly, the judge entered an order denying the Container Store's motion to compel arbitration, enforce class action waiver, and stay action. Defendant appealed to this court.[11]

## DISCUSSION

### A. Standard of Review

We review a district court's denial of a motion to compel arbitration de novo. Kristian v. Comcast Corp., 446 F.3d 25, 31 (1st Cir. 2006). "In conducting our inquiry, '[w]e are not wedded to the lower court's rationale, but, rather, may affirm its order on any independent ground made manifest by the record.'" Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003)).

### B. Arguments

On appeal, the Container Store characterizes this case as a "classic[] example of judicial hostility towards arbitration"

---

[11] The district court later granted the Container Store's motion to stay any proceedings in district court pending this appeal.

and assigns five errors to the district court's decision. According to the Container Store, the district court overstepped its boundaries and erred as a matter of law when it: (1) ruled in the first instance on whether Plaintiffs had agreed to arbitrate all their claims -- an issue it insists should have been decided not by the court but by an arbitrator; (2) found that the parties had not formed an agreement to arbitrate their ADA or state-law claims; (3) determined that Plaintiffs had not ratified post initial enrollment the loyalty program agreement (including the arbitration provision) when they participated in its loyalty program after signing up; (4) found the contract was illusory; and (5) ruled the contract was unconscionable.

For their part, Plaintiffs maintain that the district court got everything right.[12]

---

[12] As a threshold matter, Plaintiffs claim the Container Store has forfeited any right to appeal the magistrate judge's report and recommendation, which the district court adopted. Plaintiffs argue that the Container Store's objection to the report and recommendation was untimely pursuant to Federal Rule of Civil Procedure 72(a) and therefore not preserved for appellate review. This argument can be easily dismissed. Although the magistrate judge ordered that any objection be filed within fourteen days of the report and recommendation's entry, and Defendants objected on the seventeenth day, Rule 6(d) -- relating to parties being served electronically (as was the case here) -- awards a three-day extension. Fed. R. Civ. P. 6(d). Rule 6(d) was later amended to disallow a three-day extension on documents served electronically, but this amendment was not effective until December 1, 2016 -- roughly eight months after the applicable filings. Because the three-day extension was still in effect, Defendant's objection was timely and, consequently, the district court appropriately considered it, leading to the appeal before this court. See Park

## C. Merits

### 1. Legal Framework of Arguments Presented

We begin with a brief primer on the relevant statutory framework in order to better understand the parties' arguments. Almost a century ago (in 1925), Congress passed the Federal Arbitration Act ("FAA") "to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581 (2008) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)). As enacted, the FAA promotes a liberal federal policy favoring arbitration and guarantees that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Section 3 of the FAA, 9 U.S.C. § 3, affords a mechanism by which a party can request a court to stay a judicial proceeding when the matter before the court involves an issue governed by an agreement to arbitrate. Section 4, 9 U.S.C. § 4, allows a party

Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980). We therefore proceed to the merits.

- 14 -

aggrieved by another party's refusal to arbitrate to petition a district court to compel arbitration in accordance with the parties' preexisting agreement.

A party seeking to compel arbitration "must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (internal quotation marks omitted).

However, "[a] court may order parties to arbitrate a given dispute only if they have agreed to submit such a dispute to arbitration." Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc., 680 F.3d 118, 121 (1st Cir. 2012). Therefore, "a court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claims(s)." Id. at 121-22. "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010).

The requirement that a party seeking to compel arbitration establish that a contract to arbitrate was formed

recognizes that, "[t]hough a person may, by contract, waive his or her right to adjudication, see 9 U.S.C. § 2, there can be no waiver in the absence of an agreement signifying an assent." McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994). In this manner, "arbitration is a matter of contract," AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582 (1960)), and for the most part, general principles of state contract law control the determination of whether an agreement to arbitrate exists, see Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."); see also Mirra Co. v. Sch. Admin. Dist. # 35, 251 F.3d 301, 304 (1st Cir. 2001); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 19 (1st Cir. 1999).[13]

_____

[13] The parties dispute whether Massachusetts or Texas law applies in this case. This litigation commenced in Massachusetts. Therefore, Plaintiffs contend Massachusetts law applies. Meanwhile, as we previously indicated in footnote 10, the terms of the loyalty program specify that Texas law applies to any dispute between the parties. Therefore, the Container Store asks us to apply Texas law. We agree with the district court that the principles governing our decision are so fundamental and basic, the outcome does not change whether we apply Massachusetts or Texas law. Compare Momentis U.S. Corp. v. Weisfeld, 05-13-0105-CV, 2014 WL 3700697, at *2 (Tex. App. July 22, 2014) (pursuant to Texas law, a party seeking to compel arbitration must show that the agreement meets all contract elements such as offer, acceptance, meeting of the minds, consent, and consideration), with Ajemian v.

- 16 -

Pursuant to established Supreme Court precedent, however, there's an important distinction between arguments challenging the validity of an agreement and those challenging an agreement's formation. See Buckeye, 546 U.S. at 444 n.1 ("The issue of the contract's validity is different from the issue [of] whether any agreement . . . was ever concluded. Our opinion today addresses only the former."); Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70 n.2 (2010) (same).

"[C]ontract law defines formation as acceptance of an offer on specified terms." Granite Rock Co., 561 U.S. at 304 n.11; TLT Const. Corp. v. RI, Inc., 484 F.3d 130, 137 (1st Cir. 2007). One could challenge the formation of a contract by claiming one of the essential elements (offer, acceptance, and consideration) is missing. See, e.g., Amedisys, Inc. v. Kingwood Home Health Care, LLC, 437 S.W.3d 507, 513 (Tex. 2014). A challenge to formation can also be done by showing that one party never agreed to the terms of the contract, that a signatory did not possess the authority to commit the principal, or that the signor lacked the mental capacity to assent. Buckeye, 546 U.S. at 444 n.1; see also In re Morgan Stanley & Co., 293 S.W.3d 182, 187 (Tex. 2009)

Yahoo!, Inc., 987 N.E.2d 604, 612 (Mass. App. Ct. 2013) (as the "essential" elements to forming a contract pursuant to Massachusetts law, an "unambiguous manifestation of assent," offer, acceptance, and bargained-for exchange of consideration are required). Accordingly, we apply Defendant-requested Texas law (because even doing so, it still cannot prevail).

(concluding that in Texas, issues of mental capacity call into question the ability of a party to assent and, therefore, challenge the existence of a contract). Under Texas law, asserting that an agreement is illusory raises a challenge to the formation of the agreement because when an agreement is illusory it is unsupported by consideration, and thus, "there is no contract." See Lizalde v. Vista Quality Mkts., 746 F.3d 222, 225-26 (5th Cir. 2014) (finding that an agreement to arbitrate is illusory if one party can avoid arbitration by amending or eliminating the arbitration clause).

On the other hand, a challenge to validity requires consideration of the enforceability of the agreement and if it is void or voidable. Granite Rock Co., 561 U.S. at 301; Buckeye, 546 U.S. at 448-49. Like formation, this challenge requires a look at relevant state law. Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). Some challenges that attack the validity of an agreement include duress, inducement, and fraud. See S.C. Maxwell Family P'ship, Ltd. v. Kent, 472 S.W.3d 341, 344 (Tex. App. 2015) (stating that in Texas fraud or inducement are challenges to a contract's validity).[14]

---

[14] See also 7 Philip L. Bruner & Patrick J. O'Connor Construction Law § 21:73 (2018) ("Broad arbitration agreements have been found to cover challenges to the validity of the entire contract on such grounds as duress, unconscionability, coercion, frustration of purpose, lack of mutuality, capacity, confusion in signing and, of course, fraud.") (collecting cases).

Even within the "validity challenge" realm, there's another distinction:  A challenge to the validity of an entire contract containing an arbitration provision must go to an arbitrator.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-04 (1967).[15]  Meanwhile, a challenge to the validity of the arbitration provision itself must be decided by the court.  Buckeye, 546 U.S. at 443-45.

### 2. Discussion

#### a. Forum (in-store plaintiffs)

The Container Store's first argument is that the in-store plaintiffs' objection to its motion to compel arbitration should have been rejected below because their challenge (supposedly) is not based on defects in contract formation but on their inability to read the entire agreement -- meaning (at least as the Container Store sees it) their challenge is an attack on the validity of the loyalty program agreement in its entirety (and not just the validity of the arbitration provision itself).  And the Container Store believes this is precisely the issue that belongs before an arbitrator, not the court.

---

[15] In Prima Paint, the Supreme Court established the severability doctrine.  388 U.S. at 402-04.  This doctrine (with certain limitations) requires that challenges to the enforceability of the parties' agreement as a whole rather than specifically directed at the agreement to arbitrate go to an arbitrator.  Id.  In essence, it creates a legal fiction in which the arbitration agreement is a separate or separable contract from the underlying contract that is being challenged.  See id.

The in-store plaintiffs disagree with the Container Store's characterization of their own arguments. They highlight that the Container Store's motion only sought to compel enforcement of the arbitration clause (and enforce class action waivers and stay of the proceedings), and "Plaintiffs' opposition -- including their argument that an agreement was never formed -- was directed specifically at the [arbitration] [c]lause." Therefore, they insist they are challenging the formation of the arbitration agreement.

A close look at the heart of their arguments in support of their objection to arbitrate reveals they are challenging the very basic elements of contract formation relative to the arbitration provision: i.e., offer and acceptance of same. The in-store plaintiffs primarily argue that they could not have accepted the terms of a contract to arbitrate that was never communicated to them. See Dialysis Access Ctr., LLC, 638 F.3d at 378 (a challenge to offer and acceptance is a challenge to contract formation). Therefore, we reject the Container Store's attempt to re-package Plaintiffs' arguments as one regarding validity of the entire agreement rather than formation of a contract to arbitrate.[16]

_____

[16] While Plaintiffs describe their challenge as a challenge to the formation of the arbitration agreement, they also recognize the broader implication (as the district court did) that "any failure by Plaintiffs to consent would render the entire contract

- 20 -

Accordingly, we agree with the district court that it was the proper forum to consider the issue. See Buckeye, 546 U.S. at 443-45.

### b. Contract Formation

The essential elements to forming a contract pursuant to Texas law include: "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."  DeClaire v. G & B McIntosh Family Ltd. P'ship, 260 S.W.3d 34, 44 (Tex. App. 2008) (citation omitted). There can be no mutual assent or meeting of the minds -- and hence no contract -- if the one to whom the offer is supposedly made is unaware of the contract's terms and conditions.  See Broadnax v. Ledbetter, 99 S.W. 1111, 1111-12 (Tex. 1907); see also 64 Tex. Jur. Rewards § 8 (3d ed. 2018).  And "[t]he offer must be clear and definite just as there must be a clear and definite acceptance of all terms contained in the offer."  Advantage Physical Therapy, Inc. v. Cruse, 165 S.W.3d 21, 26 (Tex. App. 2005).

---

a nullity."  On that note, Plaintiffs argue in the alternative that even if their argument is viewed as a challenge to the formation of the entire agreement containing an arbitration provision, the court was still the proper forum.  Whether narrow (just the arbitration clause) or broad (the entire agreement), according to Plaintiffs, challenges to formation always belong with the court.  Because we agree that their challenge is to the formation of the arbitration agreement, we need not reach this issue at this time.  We will, however, have to cross that bridge when dealing with Plaintiff Lineback.

- 21 -

The Container Store -- which sought arbitration and has the burden of showing that an arbitration agreement had been entered into by the parties -- maintains that even if we decide that the district court was the proper forum to consider Plaintiffs' objection to its motion to compel arbitration (as we just did), it should still win on the merits because it has met its burden and the district court erred in deciding otherwise. The Container Store's argument is two-fold and we'll take each argument in turn.

First, it insists that the in-store plaintiffs were aware of all of the terms and conditions of the loyalty program, including the arbitration agreement, "[a]s evidenced by [its] training materials," which indicate that "the customer is affirmatively told of the existence of terms and conditions and given an opportunity to review them."

However, as Plaintiffs argue, the record is devoid of any evidence that the arbitration agreement was reasonably communicated to the in-store plaintiffs and is also devoid of any evidence that they manifested their assent to arbitrate during enrollment. The Container Store did not "suppl[y] any evidence to contradict the plaintiff[s'] claim that [they] never read" or were otherwise made aware of the terms and conditions of the loyalty program. See Campbell, 407 F.3d at 549. It is undisputed that the in-store plaintiffs had no way of accessing the terms of the

- 22 -

loyalty program, including the arbitration agreement, that appeared on the touch screen. And it is uncontradicted that no store clerk actually informed them that an arbitration agreement existed as a condition of entering the loyalty program.[17] Moreover, the Container Store's contention that store associates were present to inform the in-store plaintiffs of the terms and conditions applicable to the loyalty program is unavailing without any evidence that it was actually done.

The Container Store's second argument is that the in-store plaintiffs' inability to read the terms and conditions of the contract offer (including the arbitration provision) is no defense to arbitration. On that note, the Container Store suggests that they had (at a minimum) constructive notice of the terms of the arbitration agreement, from which a court could infer acceptance.

While we agree that inability to read is not a defense to contract formation, see Villa Garcia v. Merrill Lynch, Pierce,

---

[17] While Defendant maintains for the first time on appeal that the store clerks did inform the in-store plaintiffs that terms and conditions applied to the loyalty program, the only evidence Defendant cites to support this assertion is an excerpt from the training manual. But as the district court noted, the training manual does not instruct the associate to inform the customers what the terms and conditions are, nor that terms and conditions even exist. Instead, the manual instructs the associates to give the customers an opportunity to review the terms and conditions that appear on the screen -- something Plaintiffs cannot independently do (hence this litigation).

Fenner & Smith Inc., 833 F.2d 545, 548 (5th Cir. 1987), at the same time, a party cannot enter into a contract to arbitrate when it does not know or have reason to know the basic terms of the offer. See generally DeClaire, 260 S.W.3d at 44 (noting that "a meeting of the minds" on the essential terms of the contract is necessary to form an enforceable agreement). Because all three in-store plaintiffs challenge that they were ever aware of the arbitration agreement, this case boils down to whether the terms of the clause were so conspicuous that they nevertheless will be charged with constructive notice of its existence.

In support of its argument, the Container Store maintains that the district court completely ignored well-established law that an inability to read is not a defense to contract formation. The cases cited by the Container Store, however, are easily distinguishable. They involve parties entering into a contract (who later plead ignorance) when there was a presumption that the documents signed described contractual relationships and implicated legal rights -- like initiating loans, employment, and being admitted into a nursing home. See Soto v. State Indus. Prod., Inc., 642 F.3d 67, 77-79 (1st Cir. 2011); Washington Mut. Fin. Grp., LLC v. Bailey, 364 F.3d 260, 264-66 (5th Cir. 2004); Am. Gen. Fin. Servs., Inc. v. Griffin, 327 F. Supp. 2d 678, 683 (N.D. Miss. 2004). There, the parties were treated as knowing the terms despite being illiterate or blind

because of the very nature of the agreements they entered into. See id. On the other hand, a duty to read did not apply in a case where the arbitration provision at issue was buried in a "Health and Safety and Warranty Guide" with zero hint that binding terms would exist. Noble v. Samsung Elecs. Am., Inc., 682 F.App'x 113, 116 (3d Cir. 2017); see also Sgouros v. TransUnion Corp., 817 F.3d 1029, 1035-36 (7th Cir. 2016) (agreement to arbitrate not formed where TransUnion failed "to get the message through to the site user that purchasing a consumer credit score means agreeing to the Service Agreement"). Similarly here, there is "zero hint" that terms and conditions (specifically, an arbitration agreement) applied to the in-store-plaintiffs' enrollment in the loyalty program.[18]

Based upon the lack of any evidence that the in-store plaintiffs had any knowledge, actual or constructive, that arbitration terms applied to their enrollment in the loyalty

---

[18] In support of its argument that Plaintiffs were on constructive notice of the arbitration agreement, the Container Store also cites to several cases in different jurisdictions involving "clickwrap" agreements and the principle that a party who signs an agreement is bound by its terms whether or not he reads or understands them. See, e.g., Momentis U.S. Corp. v. Perissos Holdings, Inc., 2014 WL 3756671, at *2-3 (Tex. App. July 30, 2014); In re Online Travel Co., 953 F. Supp. 2d 713, 718-19 (N.D. Tex. 2013); Sanders v. Forex Capital Mkts., LLC, 11-cv-0864, 2011 WL 5980202, *3-5 (S.D.N.Y. Nov. 29, 2011); Swift v. Zynga Game Network, Inc., 805 F. Supp. 2d 904, 910-12 (N.D. Cal. 2011). However, the cases cited by the Container Store are again easily distinguishable in that the contracting party had minimal notice of the terms of the agreement -- either actual or constructive.

program, we conclude that the Container Store failed to meet its burden of establishing that an agreement to arbitrate was ever consummated between it and the in-store plaintiffs. See Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1285 (9th Cir. 2017) ("an offeree . . . is not bound by inconspicuous contractual provisions of which he was unaware"); see also Nicosia v. Amazon.com, Inc., 834 F.3d 220, 236-38 (2d Cir. 2016). Therefore, the district court correctly denied the Container Store's motion to compel arbitration as to the in-store plaintiffs.[19]

### c. Illusory

Next, the Container Store argues that the district court erred in finding that the loyalty program agreement was illusory

---

[19] The Container Store further argues that the district court erred in concluding that it was not appropriate to arbitrate Plaintiffs' ADA claim because there was not a sufficient "minimal level of notice" to Plaintiffs of the agreement to arbitrate. When a party relies on the FAA to compel arbitration of a claim arising under the ADA, the court must undertake a supplemental "appropriateness" inquiry. Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005); see 42 U.S.C. § 12212. A party may prevail on its demand for arbitration of an ADA claim if it can establish: (1) that the provision for mandatory arbitration is part of a valid contract within the purview of the FAA; and (2) enforcement of the arbitration provision would be appropriate (meaning, there is a minimal level of notice given to the party being compelled to arbitrate). Campbell, 407 F.3d at 554-55. Here, we need not reach the second prong requiring a "minimal level of notice" (where the Container Store appears to hang its hat), because for reasons just explained in this opinion it fails to meet the first, i.e., establishing that the arbitration agreement is a "valid contract." Therefore, the district court was correct in denying the Container Store's motion to compel arbitration on Plaintiffs' state and ADA claims.

and therefore void. The Container Store's illusory arguments (and Plaintiffs' response) are directed to all Plaintiffs; however, because the Container Store has failed to establish that it entered into an arbitration agreement with the in-store plaintiffs on offer and acceptance grounds (and Lineback does not dispute she clicked accepting the terms and conditions), the issue of illusoriness is homed in just to Lineback (the remaining plaintiff).

In support of its argument that the district court erred in its illusory finding -- a finding driven by the court's conclusion that the loyalty program's terms gave the Container Store carte blanche to modify the terms at any time -- the Container Store raises four distinct arguments, which we discuss in turn, beginning with its contention that an arbitrator should have decided the illusoriness issue given it is a challenge to the entire loyalty program agreement (and not just the arbitration agreement). Naturally, Lineback disagrees and, in response, contends that we should not consider the Container Store's argument that the district court should not have reached the issue of contract illusoriness because (1) it was not raised in the district court or (2) properly developed before us. Alternatively, she argues that even if we consider the issue, the district court was the proper forum because (a) under Texas law, illusory challenges go to contract formation; (b) she challenges the formation of the arbitration agreement exclusively; and (c) absent the parties'

- 27 -

contracting otherwise, issues of "enforceability or applicability" of an arbitration agreement go to the court.

### i. Forum

In their objection to the Container Store's motion to compel arbitration, Plaintiffs argued that the contract was illusory. In its reply to Plaintiffs' objection, the Container Store argued that it was not for three distinct reasons, but never specifically challenged the district court's ability to consider the illusoriness defense.[20] In its brief to us regarding the district court's consideration of the issue of illusoriness, the Container Store argues: "As a threshold matter, the arbitrator should have decided this issue since this claim is directed at the entire agreement, and not just the arbitration provision. The 'change-in-terms' provision indisputably applies to the entire loyalty program membership agreement, not just the arbitration provision." Its discussion on the matter begins and ends there. As noted, in Plaintiffs' brief they argue that the Container Store has waived this argument by failing to raise it with the district court or provide a meaningful analysis before us. In its reply

---

[20] Its argument challenging the appropriateness of the district court considering Plaintiffs' objections to the motion to compel arbitration was directed at Plaintiffs' inability-to-read defense. Plaintiffs' illusory argument is distinct.

brief the Container Store does not discuss waiver -- instead, it focuses on the merits.

An argument not raised to the district court cannot be debuted on appeal. McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Therefore, the Container Store's failure to challenge the appropriateness of the district court deciding Lineback's illusory defense to its motion to compel arbitration (opting instead to simply discuss the merits of the illusoriness issue) renders this argument forfeited. See id. Forfeited arguments are only considered for plain error. Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 14 (1st Cir. 2007) (citation omitted). Plain error requires appellants to demonstrate: "(1) an error occurred (2) which was clear or obvious . . . (3) affected [his] substantial rights [and] (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." Id. at 14-15. Because we have yet to decide whether challenges regarding the formation of a contract, where arbitration is but one provision in that contract, should be decided by an arbitrator or a court, Farnsworth v. Towboat Nantucket Sound, Inc., 790 F.3d 90, 99 n.7 (1st Cir. 2015), any error of the district court in reaching the merits was not clear and obvious.

Therefore, the Container Store's newly-articulated argument on appeal that the district court should not have considered the issue of illusoriness fails.

## ii. Merits

Container Store offers us three additional reasons for reversing the district court's illusory findings: (1) the duty of good faith and fair dealing renders the agreement non-illusory; (2) Plaintiffs could cancel their membership in the loyalty program at any time and so the contract was not illusory; and (3) even if the change-in-terms provision rendered the contract illusory, that provision alone should have been severed, not the entire contract found to be unenforceable. Unsurprisingly, Lineback disagrees.

But before we address the Container Store's contentions, a discussion of what constitutes illusoriness would be helpful. Under Texas Law, an arbitration clause is illusory if a party to a contract "can avoid its promise to arbitrate by amending the provision or terminating it altogether." In re 24R, Inc., 324 S.W.3d 564, 567 (Tex. 2010); see also Morrison v. Amway Corp., 517 F.3d 248, 257 (5th Cir. 2008) (reversing district court order compelling arbitration because party retaining the right to alter the arbitration agreement rendered it illusory and unenforceable); Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 205 (5th Cir. 2012). As noted, a contract that is illusory was never formed, because it lacked the necessary consideration -- in other words,

there was never a bargained-for exchange.  "Where no consideration exists, and is required, the lack of consideration results in no contract being formed."  3 Williston on Contracts § 7:11 (4th ed.).

Put differently, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party has the right to change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset. Id.  The crux of this issue is whether the Container Store has the power to make changes to its arbitration policy that have retroactive effect, meaning changes to the policy that would strip the right of arbitration from a party who has already attempted to invoke it.  See Carey, 669 F.3d at 205.  A reading of the "Changes to the Terms" provision answers this in the affirmative.  This section in the loyalty program's terms and conditions provides that:

> We [,the Container Store,] reserve the right, at our discretion, to change, modify, cancel, add or remove any or all portions of these terms, any policy, FAQ, or guideline pertaining to the [loyalty program] at any time.  If any terms change in the future, we will let you know by posting an update to www.containerstore.com/pop with the most recent modification date.  Any changes or modifications will be effective immediately upon posting the revision and you waive any right you have to receive special notice of such change.  By continuing to use the [loyalty program], you agree to the revised terms.
>
> . . .

> [The Container Store] reserves the right, without limitation, to terminate, change, limit, modify, or cancel any [Loyalty Program] terms, conditions, rules, regulations, benefits . . . at any time, with or without notice, even though such changes may affect the value of already-issued . . . benefits.

Clearly, based on the change-in-terms clause, the Container Store unilaterally retains the right to alter the terms of the loyalty program, including the arbitration provision, "at any time." Pursuant to Texas law, this is a text-book definition of illusory. See Morrison, 517 F.3d at 257. Moreover, because Texas law treats illusoriness as an issue regarding consideration needed to enter into a contract, the presence of an illusory agreement therefore indicates no agreement to arbitrate exists between the parties.

The three arguments made by the Container Store in an attempt to challenge the district court's illusoriness determination are not persuasive. First, while the Container Store argues that the duty of good faith and fair dealing renders this contract not illusory, it provides no legal support pursuant to Texas law for this proposition. Other jurisdictions have recognized that the duty of good faith and fair dealing "limits the authority of [a contracting] party retaining discretion under the contract" and that this alone "is enough to avoid the finding of an illusory promise." Fagerstrom v. Amazon.com, Inc., 141 F.

- 32 -

Supp. 3d 1051, 1066 (S.D. Cal. 2015). But the Texas cases the Container Store cites -- Cleveland Const., Inc. v. Levco Const., Inc., 359 S.W.3d 843, 853-54 (Tex. App. 2012), and Budd v. Max Int'l, LLC, 339 S.W.3d 915, 918-20 (Tex. App. 2011) -- say nothing about good faith and fair dealing and so offer nothing to back up its lead argument.[21]

Similarly unconvincing is the Container Store's argument that the contract cannot be found to be illusory because Plaintiffs can terminate the agreement at any time. We agree with Plaintiffs that their "ability to cancel their [loyalty program] memberships does not 'prevent [Defendant] from retroactively eliminating its arbitration policy, which is the critical inquiry for determining whether an agreement is illusory."

Lastly, the Container Store's argument that any illusory provision of the contract could simply be severed and the remainder of the contract stand would require us to engage in an absurd process.[22] In essence we would be reviving a contract we have found was never formed for its lack of consideration, omitting the

---

[21] Which perhaps explains why the Container Store cites the Southern and Eastern District of California, the Eastern District of New York, as well as both the Second and Eighth Circuit.

[22] The loyalty program agreement also contains a severance clause. The clause provides that "[i]f any provision of these terms is found to be unlawful, void, or unenforceable, then that provision will be deemed severable from these terms and will not affect the validity or enforceability of any remaining provisions."

change-in-term clause that was fatal to the contract's proper formation, to therefore conclude a contract was formed. Because, again, pursuant to Texas law the issue of illusoriness goes to formation (and not to validity or enforceability), we think this would be an inappropriate exercise.

We therefore also affirm the district court's order denying the Container Store's motion to compel arbitration as to Lineback because no agreement was formed between her and the Container Store relating to her enrollment in the loyalty program.

### d. Ratification

Lastly, according to the Container Store, Plaintiffs received an email following their enrollment with the terms and conditions of the loyalty program. It maintains that the district court erred in rejecting its argument that by continuing to participate in the loyalty program, Plaintiffs ratified the agreement.

While a party may ratify a contract to which it otherwise was not bound by reaping the benefits awarded in a contract's terms, Rennie v. Mut. Life Ins. Co. of N.Y., 176 F. 202, 206 (1st Cir. 1910), we agree with Plaintiffs that the Container Store has not shown how Plaintiffs benefited from the loyalty program following their initial enrollment. Moreover, while there was testimony that this email was customarily sent following enrollment, the Container Store failed to present a copy or sample

of the "welcome" email containing the arbitration terms, or of the monthly promotional emails that also contained the provisions.

## CONCLUSION

For the reasons discussed above, we **_affirm_** the district court order denying the Container Store's motion to compel arbitration.[23]

**_Affirmed. Costs to Appellees/Plaintiffs_**.

---

[23] We need not decide the issue of whether the agreement was unconscionable, since we conclude that no agreement to arbitrate was formed. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) (reversing Ninth Circuit's determination that when "a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court"). Similarly, given we are affirming the district court's denial of the Container Store's motion to compel arbitration, we need not address Defendant's argument that we should stay the district court proceeding if any of the plaintiffs are compelled to arbitrate.