**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-2074**

---

CHERYL ANN SARVER, as Personal Representative of the Estate of Gordon Jay
Sarver,

       Plaintiff – Appellee,

  v.

CLAIBORNE SENIOR LIVING, LLC; TCABC REAL ESTATE HOLDINGS, LLC,

       Defendants – Appellants.

---

Appeal from the United States District Court for the District of South Carolina, at
Charleston.  Bruce H. Hendricks, District Judge.  (2:23-cv-02051-BHH)

---

Argued:  September 12, 2025            Decided:  October 14, 2025

---

Before AGEE, RICHARDSON, and BERNER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:**  Elizabeth Craigmile Moran, HALL BOOTH SMITH, P.C., Greenwood
Village, Colorado, for Appellants.  Frederick Elliotte Quinn, IV, STEINBERG LAW FIRM
LLP, Summerville, South Carolina, for Appellee.  **ON BRIEF:**  Ashley S. Heslop, HALL
BOOTH SMITH, P.C., Charleston, South Carolina, for Appellants.  Steven E. Goldberg,
THE STEINBERG LAW FIRM, LLC, Summerville, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Claiborne Senior Living, LLC ("CSL") and TCABC Real Estate Holdings, LLC ("TCABC") (collectively, "Claiborne") appeal the district court's order denying their motion to compel arbitration. The district court found that they had waived their right to arbitrate. We agree and therefore affirm the district court's denial of the motion to compel.

## I.

## A.

Gordon Jay Sarver ("Gordon") executed a General Durable Power of Attorney ("GDPOA") in 2016, appointing his wife, Cheryl Sarver ("Ms. Sarver"), as his attorney-in-fact if he became incapacitated.[1]

In October 2022, Gordon, suffering from dementia, moved into The Claiborne at Brickyard Crossing (the "Facility"), a memory care facility in Summerville, South Carolina. At the time, TCABC owned and operated the Facility, while CSL—acting as TCABC's agent—managed it. Before Gordon was admitted to the Facility, Ms. Sarver signed a "Residency Agreement" and a document titled "Binding Arbitration Agreement" ("Arbitration Agreement"), which was "Exhibit F" to the Residency Agreement. On both documents, Ms. Sarver wrote Gordon's name on the signature line labeled "Resident Signature" and signed her name on the line labeled "Legal Representative Signature."

---

[1] Although not relevant to this appeal, the GDPOA was not valid until recorded as required by South Carolina law.

Unfortunately, Gordon passed away four months later from injuries he sustained after he walked away from the Facility, fell, and hit his head.

B.

In May 2023, Ms. Sarver, as the personal representative of her late husband's estate, sued Claiborne on various state-law claims arising from Gordon's death in the United States District Court for the District of South Carolina. Claiborne answered, raising arbitration as one of several affirmative defenses. J.A. 24 (asserting that "[t]he parties to this case are subject to a binding arbitration agreement").

Even so, Claiborne did not move to compel Ms. Sarver to arbitrate at that time. Instead, between July 2023 and March 2024, the case proceeded in the ordinary course. The court entered a scheduling order, which the parties jointly moved to modify twice. Claiborne served disclosures required by the local rules. The parties moved for a consent confidentiality order and exchanged written discovery. Ms. Sarver deposed three witnesses, and Claiborne's counsel was present and examined each. She also subpoenaed Claiborne's insurance agents, seeking information about its coverage. And Claiborne objected to those subpoenas only because it believed they were improper under the Federal Rules of Civil Procedure. But Claiborne never moved to compel arbitration.

Based on information learned during discovery, Ms. Sarver determined that she needed to add TCABC as a defendant and moved to amend her complaint in February 2024. Nothing else about the complaint changed.

The next month—nearly eight months after the litigation began—Claiborne changed course and moved to compel arbitration and to stay the case under the Federal

3

Arbitration Act, 9 U.S.C. §§ 3–4 ("Motion" or "Motion to Compel Arbitration"). Ms. Sarver opposed the Motion, arguing in part that Claiborne waived its right to arbitration by actively litigating the case and acting inconsistently with that right.

With the Motion fully briefed and the scheduling order (under which discovery was to end on July 1, 2024) in effect, Ms. Sarver sought to depose more Claiborne employees and witnesses on June 4, 2024. Claiborne opposed her efforts, stating that it intended to move to stay discovery until the district court ruled on its Motion to Compel Arbitration. Ms. Sarver's counsel represented to Claiborne's counsel that he would not use Claiborne's "continuance to participate in *depos* as evidence of waiver[.]" J.A. 845 (emphasis added).

Two days later, Claiborne moved to stay discovery, noting that although it "intend[ed] to fully participate in discovery, . . . whether this case is submitted to arbitration affects procedurally how discovery will proceed." J.A. 746. Claiborne also said that "it appear[ed] that further participation in discovery while the [Motion was] pending could prejudice [its] right to compel arbitration." *Id.* The court granted the motion to stay on June 26.

On August 1—with no decision on its Motion to Compel Arbitration yet entered—Claiborne served subpoenas on three medical providers seeking Gordon's medical records. Ms. Sarver became aware that Claiborne received documents responsive to those subpoenas on September 10 and, that same day, alerted the court.

The next day, the district court denied the Motion to Compel Arbitration in a brief text order. With little analysis, the court found, among other things, that Claiborne waived its right to arbitrate "by actively participating in the judicial process and by taking actions

4

inconsistent with th[at] right[.]" J.A. 806. Claiborne moved for reconsideration, arguing Ms. Sarver consented to the subpoenas and its counsel mistakenly believed only discovery *deadlines* were stayed, not discovery itself. In another short text order, the court denied that motion.

Claiborne timely appealed the denial of its Motion to Compel Arbitration. We have jurisdiction under 9 U.S.C. § 16(a). *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 739 (2023).

## II.

Claiborne contends that the district court erred in denying its Motion to Compel Arbitration by incorrectly concluding that it waived its right to arbitrate.[2] We "review de novo a district court's conclusion that a party's conduct amounts to waiver of the right to arbitrate," but defer to the "court's factual determinations upon which the waiver finding was based[.]" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001).

## A.

Until recently in this Circuit, a party waived its right to arbitrate "by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). This occurred "when a party actively participate[d] in a lawsuit or t[ook] other

---

[2] Besides waiver, Claiborne argues on appeal that the district court's alternative bases for denying the Motion to Compel Arbitration were incorrect. Opening Br. 2. Those were: Ms. Sarver lacked authority to bind Gordon (or his estate) to the Arbitration Agreement and, even if she had authority, there was "no meeting of the minds as to the identity of the 'Parties' to the arbitration agreement, which is an essential term." J.A. 807. Because we resolve this appeal on waiver, we do not reach these other arguments.

5

action inconsistent with the right to arbitration." *In re Mercury Constr. Corp.*, 656 F.2d 933, 939 (4th Cir. 1981) (cleaned up).

Recently, however, the Supreme Court clarified that waiving the right to arbitration cannot be conditioned on a showing of prejudice. *Morgan v. Sundance*, 596 U.S. 411, 417 (2022). Rather, waiver in the arbitration context—like any other context—is "'the intentional relinquishment or abandonment of a known right.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Thus, the inquiry is whether the party seeking to compel arbitration "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right[.]" *Id.* at 419. Here, the answer is "yes."

## B.

Claiborne knew of its right to arbitrate and had everything it needed to move to compel arbitration from the moment Ms. Sarver filed the complaint. It had the Binding Arbitration Agreement—signed by Ms. Sarver in October 2022—that provided that "any dispute, claim or controversy of any kind, whether in contract or in tort . . . between the Parties . . . shall be determined exclusively by submission to binding arbitration[.]" J.A. 170. And it had the Residency Agreement, also signed by Ms. Sarver, with a "POA" notation (understood to mean "power of attorney") written next to her signature. Claiborne had, at a minimum, a good-faith basis to assert an agreement to arbitrate existed.

Rather than invoke its right to arbitrate, Claiborne sat on its hands for nearly eight months. That alone tilts toward finding waiver here. *See MicroStrategy*, 268 F.3d at 250 ("[D]elay in seeking arbitration is a factor to be considered when determining waiver.").

6

Along the way, Claiborne sometimes stated that, by taking some action, it was not waiving its right to compel arbitration. *See, e.g.*, J.A. 18 (stating that Claiborne was answering the complaint "without waiving its right to move to compel arbitration"); J.A. 38 (stating that, notwithstanding Claiborne's statement that all claims should be tried by a jury, Claiborne "reserves its right to pursue arbitration"). These representations took place while Claiborne simultaneously enjoyed the fruits of litigating a case in federal court. Such double-mindedness counsels in favor of waiver; Claiborne's strategic choices were at odds with any efforts to truly preserve its right to arbitrate.

Claiborne was testing the waters while keeping arbitration in its back pocket to be played if it sensed the litigation turning sideways. It responded to Ms. Sarver's discovery requests and served its own written discovery on her, including twenty-four interrogatory requests, J.A. 278–82, and thirty-three requests for production, J.A. 284–88. When Ms. Sarver deposed the director of the Facility under Federal Rule of Civil Procedure 30, and two other Facility employees, Claiborne not only permitted the depositions without objection, but also questioned the witnesses. Objecting to a subpoena Ms. Sarver served, Claiborne raised arguments only under the Federal Rules of Civil Procedure with no mention of its "reserved" right to arbitration. *See* J.A. 591.

Although those actions are likely sufficient to find waiver, there is more. After the district court stayed discovery pending resolution of the Motion to Compel Arbitration *at Claiborne's request*, Claiborne served subpoenas on three medical providers seeking Gordon's medical records. By doing so, it violated the court's stay order and acted inconsistently with its representation that discovery needed to be halted for it to exercise

7

its right to arbitrate. Claiborne contends this was a mistake—its counsel thought that Ms. Sarver would not use further participation in discovery as evidence of waiver, and that the court's order stayed only discovery deadlines, not discovery itself. But Ms. Sarver's counsel represented to Claiborne's counsel only that he would not use Claiborne's "continuance to participate in *depos* as evidence of waiver[.]" J.A. 845 (emphasis added). And it is difficult to accept that Claiborne "mistakenly" believed its actions did not violate the stay order that it itself asked the court to enter to protect its right to arbitrate. By doing so, Claiborne acted inconsistently with its right to arbitrate.

Claiborne could have moved to compel arbitration at any time, but chose to wait almost eight months to do so. It could have moved to stay discovery pending the outcome of the Motion to Compel Arbitration at any time, but did not until nearly three months after it filed the Motion. Instead, it availed itself of the expansive discovery practice permitted by the Federal Rules.[3] These actions are inconsistent with the right to arbitrate under the facts of this case and, together, represent Claiborne's "knowing[] relinquish[ment]"—or waiver—of its right to arbitrate. *Morgan*, 596 U.S. at 419.

---

[3] Claiborne contends its participation in discovery did not amount to waiver. In its view, it simply complied with the court's scheduling order and sought only to generally develop the facts of the case. Opening Br. 19. It merely requested basic initial written discovery. But the discovery it sought and received in federal court would not have been available if the case immediately proceeded to arbitration. The JAMS Comprehensive Arbitration Rules & Procedures—the rules that govern "any arbitration pursuant to" the Arbitration Agreement, J.A. 170—do not provide for written discovery, but only "the voluntary and informal exchange of all non-privileged documents and other information[,]" J.A. 690. They also limit each party to one deposition, with additional depositions available only with the approval of the arbitrator. J.A. 690–91. Claiborne obviously had advantages with discovery in court that would not have been present in arbitration.

8

None of Claiborne's contrary arguments is convincing. For example, Claiborne contends that it could not have moved to compel arbitration in good faith any earlier because it could not prove that Ms. Sarver had authority to sign for Gordon until it received a copy of the GDPOA during discovery. Opening Br. 19. Therefore, it merely continued to comply with the scheduling order until then. But this argument may not have been preserved, given that Claiborne raised it for the first time in its motion for reconsideration in the district court. And even assuming that it was, it is a flawed assumption that Claiborne needed the GDPOA to move to compel arbitration.

By admitting Gordon (who was suffering from dementia) to the Facility—even though it did not first obtain a copy of his GDPOA—Claiborne acted as if Ms. Sarver had apparent, if not actual, authority to sign the Residency Agreement and Arbitration Agreement. Otherwise, it would not have permitted Gordon to move in, since signing those documents, according to Claiborne, is a condition of admission to the Facility. And if Claiborne wanted to be sure that Ms. Sarver had the necessary authority, it could have moved to compel arbitration and sought limited discovery on the existence or formation of an agreement to arbitrate. *See Berkeley Cnty. Sch. Dist. v. Hub. Int'l*, 944 F.3d 225, 242 (4th Cir. 2019); *see also id.* at 241 (noting that "'[a] challenge to formation can . . . be done by showing . . . that a signatory did not possess the authority to commit the principal'" (quoting *Nat'l Fed. of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 81 (1st Cir. 2018))).

Even more, this assumption is belied by Claiborne's own claims. When it moved to compel arbitration, Claiborne did not rely on *only* the GDPOA to show the Arbitration

9

Agreement was enforceable. It also argued that Gordon was a third-party beneficiary of, and bound by, the agreements that Ms. Sarver signed, and that Gordon and his estate were bound by those agreements through equitable estoppel. Later, Claiborne offered another avenue—Ms. Sarver had authority to sign the Arbitration Agreement on Gordon's behalf under the South Carolina Adult Health Care Consent Act, S.C. Code Ann § 46-66-30. In other words, Claiborne identified at least three ways other than the GDPOA that it could have proven that Ms. Sarver had authority to act on Gordon's behalf. By pressing these other authority-related arguments, Claiborne undercut its waiver argument.

\* \* \* \*

At bottom, Claiborne had all it needed to assert its right to arbitrate when Ms. Sarver filed the complaint. Before doing so, however, it took advantage of federal discovery practice. Only as that process was ending, Claiborne, armed with the fruits of that process, sought to enforce its right to arbitration. But by that time, Claiborne's actions had waived that right. We therefore affirm the district court's order.

## III.

For the reasons stated above, we affirm the district court's decision to deny Claiborne's motion to compel arbitration.

*AFFIRMED*

10