# United States Court of Appeals
## For the First Circuit

No. 17-1721

UNITED STATES OF AMERICA,

Appellee,

v.

LYNROLTE CEZAIRE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

James M. Falvey for appellant.
Robert E. Richardson, Assistant United States Attorney, with
whom Andrew E. Lelling, United States Attorney, was on brief, for
appellee.

September 23, 2019

**BARRON**, **Circuit Judge**.  Lynrolte Cezaire challenges her 2017 convictions, after trial in the United States District Court for the District of Massachusetts, for disclosure of social security numbers, in violation of 42 U.S.C. § 408(a)(8), and aggravated identity theft, in violation of 18 U.S.C. § 1028A.  She was sentenced to one day of imprisonment for the first conviction and to twenty-four months of imprisonment for the second.  Cezaire, who is Haitian American, raises only one issue on appeal:  whether the District Court abused its discretion by refusing her "request for generalized and public race-based voir dire."

In arguing that the District Court abused its discretion, Cezaire relies on Rosales-Lopez v. United States, 451 U.S. 182 (1981).  There, the Supreme Court of the United States held that, under the federal Constitution, a trial judge in a criminal case must ask prospective jurors, at least as a group, about their potential racial biases during voir dire when "racial issues [are] 'inextricably bound up with the conduct of the trial,'" such as when a defendant asserts that he was framed because of his race.  Id. at 189.  The Court also held pursuant to its supervisory powers over the federal judiciary that "federal trial courts must [voir dire prospective jurors, at least as a group, regarding racial bias] when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups," id. at 192, but

that, otherwise, a federal district court's "[f]ailure to honor [a defendant's] request . . . will be reversible error only where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury," id. at 191.

Cezaire contends that, under Rosales-Lopez, her convictions cannot stand. She asserts that she requested that the District Court ask the prospective jurors as a group a question during voir dire about whether any of them harbored racial bias, the District Court denied that request, and there was a "reasonable possibility" that racial bias might have affected the jury.[1] Id. To support that last contention, Cezaire notes that her "Haitian background came up throughout the trial," as both Cezaire and the government's main witness, Emeline Lubin, offered testimony regarding their shared Haitian heritage and the Haitian practice of establishing "sols" with family members in Haiti.

According to Cezaire, a "sol" is a "Haitian term that refers to 'a short-term money saving method among a group of people.'" Cezaire's testimony about "sols" was key, she claims, because it helped to show that potentially incriminating text messages between Cezaire and Lubin were actually about money she

_____

[1] Cezaire did not request that the District Court ask the prospective jurors individually about their possible racial biases, and so we do not address that issue.

- 3 -

needed to withdraw from a "sol" she shared with an associate of Lubin's brother.

To assess the merits of Cezaire's challenge, we begin by reviewing the following colloquy between Cezaire's counsel and the District Court that occurred during voir dire:

> **DEFENSE COUNSEL:** Okay. I –- I didn't ask for this, but I wonder if the Court would consider giving a race question to the jury. My client's Haitian American. I note that the cooperating witness is also Haitian American, but there obviously are going to be witnesses who are not. I'm wondering if the Court would give that type of instruction.
> **THE COURT:** I don't see anything in the case that would make it necessary. It's not that kind –- you know, it's not a --
> **DEFENSE COUNSEL:** It is not that kind of case, but I just given the current climate in the --
> **THE COURT:** I think --
> **DEFENSE COUNSEL:** -- country, I always think it's prudent to err on the side of caution to the extent that any jurors might give --
> **THE COURT:** I think that the issue will be -- anyone who would answer the question adversely to their public image would answer one of my other questions that way, I think.
> **DEFENSE COUNSEL:** Okay.
> **THE COURT:** So let's see.
> **DEFENSE COUNSEL:** Thank you.

Cezaire contends that this colloquy shows that she requested that a question concerning racial bias be asked of the group of prospective jurors during voir dire and that the District Court denied her request, such that her challenge is preserved and our review is for abuse of discretion. But, we do not agree.

The District Court did not respond to the initial suggestion by Cezaire's counsel to ask a question about racial bias during voir dire by simply refusing to grant it. The District Court instead stated that, although it did not see anything about the case that indicated a need to ask such a question, it would be willing to consider that request after it had an opportunity to question the prospective jurors about their biases in general. As the District Court put it, "anyone who would answer the [race] question adversely to their public image would answer one of my other questions that way, I think."

But, at that point, Cezaire's counsel did not then object to the proposed course of action. Instead, she simply said, "[o]kay," to which the District Court then added, "let's see." And Cezaire's counsel then brought the exchange to a close by saying only, "[t]hank you."

The record further shows that, after the District Court asked the prospective jurors about whether they harbored any biases that might affect their impartiality, Cezaire's counsel did not then request that the District Court ask an additional question that probed specifically for racial bias. Instead, Cezaire's counsel chose not to raise the issue at all until she did so in her opening brief to us on appeal.

Accordingly, we conclude that, even if the record does not suffice to show that Cezaire waived the objection to the

District Court's failure to ask a question about racial bias during voir dire, it does suffice to show that the objection was at least forfeited.[2] Our review, therefore, is only for plain error. United States v. Espinal-Almeida, 699 F.3d 588, 600 (1st Cir. 2012) (citing United States v. Rivera-Rodríguez, 617 F.3d 581, 600-04 (1st Cir. 2010)).[3] And, as Cezaire fails to make any argument as to how she can meet that demanding standard, her claim must fail.

To be sure, there is precedent to indicate that jurors will be forthcoming in some instances in disclosing their racial biases, even when asked in a group setting. See United States v. Casanova, 886 F.3d 55, 59 (1st Cir. 2018) (noting that three jurors stood up to answer "yes" when asked if they "had 'any feelings of any kind that may affect [their] ability in any way to be a fair and impartial juror in the trial of an African American defendant'"); State v. Long, 575 A.2d 435, 469 (N.J. 1990) (Handler, J., concurring in part and dissenting in part) (stating

_____

[2] "Forfeiture is the failure to make the timely assertion of a right, an example of which is an inadvertent failure to raise an argument. Waiver, in contrast, is the intentional relinquishment or abandonment of a known right." Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017) (alteration omitted) (internal quotation marks omitted) (citations omitted).

[3] United States v. Bates, 590 F. App'x 882 (11th Cir. 2014) -- on which Cezaire relies in contending that she properly objected during voir dire -- is not to the contrary, as there the district court was faced with a request to ask a question concerning bias on the basis of sexual orientation in "clear and simple" terms and "specifically denied it." Id. at 885 n.2.

that "[f]our jurors answered 'yes'" when asked "[w]ould the fact that the defendant is black and one of the victims is white affect or influence your judgment in this case?"). But, while this precedent would appear to confirm the value of asking questions specifically probing for racial bias, Cezaire fails to show that the District Court's decision not to ask such a question here was a clear or obvious error. In fact, far from making out that case, Cezaire states in her reply brief that her challenge, on this record, is "inconsistent" with our prior ruling in United States v. Gelin, 712 F.3d 612 (1st Cir. 2013).

There, the criminal defendants, who were also Haitian Americans being tried for federal health-care fraud charges, objected to the district court's failure to ask prospective jurors about racial bias during voir dire. See id. at 615-16. On appeal, the defendants challenged the district court's failure to ask about racial bias on the ground that "race became a highly relevant issue through the trial because extensive portions of the testimony pointed to their Haitian heritage 'in [a] very inflammatory manner.'" Id. at 621 (alteration in original). We rejected that challenge, notwithstanding that the testimony of one government witness did contain "racial overtones." Id. at 622. We explained that the defendants did not address the relevant case law in their briefs, including Rosales-Lopez, see id. at 621, and that most of

the trial "concentrated exclusively on the details of the underlying fraudulent scheme," id. at 622.

Cezaire makes no argument that Gelin itself is distinguishable. Instead, she contends only that it may not control because we have decided other cases since Gelin that have considered challenges to a district court's decision regarding the asking of prospective jurors about racial bias, such as United States v. Parker, 872 F.3d 1 (1st Cir. 2017), cert. denied, 138 S. Ct. 936 (2018), and Casanova, 886 F.3d 55. But, neither case in any way suggests that, given Gelin, it was clear or obvious error for the District Court in this case to refuse to ask such a question.

Accordingly, the judgment is **affirmed**.