# United States Court of Appeals
## For the First Circuit

No. 17-9002

IN RE: KIMMY R. JACKSON, a/k/a Kimmy R. Jackson-Lupoli, a/k/a
Kimmy Lupoli,

Debtor.

KIMMY RENE JACKSON,

Appellant,

v.

ING BANK, FSB; CAPITAL ONE, N.A.; BANK OF AMERICA, N.A.; HARMON
LAW OFFICES, P.C.; PORTNOY & GREENE, P.C.,

Appellees.

APPEAL FROM THE UNITED STATES
BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

Before

Howard, <u>Chief Judge</u>,
and Thompson, <u>Circuit Judge</u>.[*]

<u>David G. Baker</u> for appellant.
<u>David Himelfarb</u> for appellees ING Bank, FSB and Capital One,
N.A.; <u>Connie Flores Jones</u> for appellee Bank of America, N.A.; <u>Kurt
R. McHugh</u>, with whom <u>Robert M. Mendillo</u> was on brief, for appellee

---

[*] Judge Torruella heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

Harmon Law Offices, P.C.

February 22, 2021

**HOWARD**, **Chief Judge**.  This appeal arises from two attempts to foreclose the mortgage on a condominium that appellant Kimmy R. Jackson purchased over a decade ago.  Jackson sought relief in the bankruptcy court, asserting a range of claims against the financial institutions and law firms connected with the foreclosures.  The bankruptcy court found a subset of Jackson's claims meritorious, declaring the first foreclosure void and awarding her some damages, but it scrapped the remainder of her claims.  Because Jackson's challenges to the bankruptcy court's decisions are largely waived and otherwise baseless, we affirm.

## I.

## A.

In 2004, Jackson borrowed $220,000 from Countrywide Home Loans, Inc. ("Countrywide") to purchase a condominium at 700 Wellman Avenue, Unit 316, North Chelmsford, Massachusetts (the "property").  She executed a promissory note to Countrywide memorializing the thirty-year interest-only loan, whose terms included a fixed 5% interest rate for the first five years then (as of March 1, 2009) a yearly adjustable rate pegged at the LIBOR plus 2.250%, rounded to the nearest 0.125%.  As security, Jackson granted a mortgage on the property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Countrywide and its successors and assigns.  In January 2009, MERS assigned its interest in the mortgage to Countrywide for the benefit of ING

- 3 -

Bank, FSB ("ING"). Then in February 2012, Countrywide assigned that interest to ING. In November 2012, ING merged into Capital One, National Association ("Capital One").

Jackson defaulted on her loan in 2008. In April 2008, Countrywide sent her a notice of its intention to foreclose and of her right to cure the default by July 2008. Then in December 2008, Countrywide obtained a judgment of foreclosure and sale of the property, published a notice of sale through its counsel Harmon Law Offices, P.C. ("Harmon"), acquired the property, and granted it to Countrywide Home Loans Servicing, LP ("CHL") for the benefit of ING. In a "Move Out Agreement" dated January 2009, Jackson agreed to accept $3,500 from CHL in exchange for vacating the property by February 2009 and releasing CHL and its successors from a broad range of claims. Bank of America, N.A. ("Bank of America") later became successor by merger to CHL.

Jackson filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in February 2010, received a discharge injunction in May 2010, and the case was closed in January 2011. In October 2011, she received a letter from ING informing her of a monthly payment due on the promissory note. Two weeks later and then again in January 2012, Jackson received a letter from Portnoy & Greene, P.C. ("P&G") identifying itself as a debt collector and stating that the entire amount on the promissory note was due to its client ING. These communications

- 4 -

led Jackson to believe that the initial foreclosure was unsuccessful, prompting her to move back into the property in June 2012. Later that month, she received a notice from ING announcing a foreclosure sale of the property in July 2012. Days before the scheduled sale, Jackson filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Although that case was dismissed, she successfully reopened her 2010 case in December 2012 and obtained reinstatement of the automatic stay in January 2013.

**B.**

In February 2013, Jackson filed a six-count adversary complaint in the bankruptcy court naming five defendants: Bank of America (as successor to CHL); ING; Capital One (as successor to ING); P&G; and Harmon. In Count I, she alleged wrongful foreclosure against all defendants except P&G as to the 2008 foreclosure because neither Countrywide nor ING was the mortgagee at the time. In Counts II, III, and IV, respectively, Jackson alleged violations of the Massachusetts and federal Fair Debt Collection Practices Acts ("FDCPA"), deceit and misrepresentation, and negligence against all except P&G. In Count V, she alleged deceit, misrepresentation, violation of the FDCPA, and violation of the discharge injunction against P&G for falsely stating in its January 2012 letter that ING was the mortgagee at the time. Finally, in Count VI, Jackson alleged breach of contract and

- 5 -

wrongful foreclosure against all defendants for failure to send her notices of default before both the 2008 and 2012 foreclosures.

In May 2013, the bankruptcy court dismissed Count II in part (the federal FDCPA claim) and Count III "for the reasons set forth on the record of today's hearing." Pursuant to the court's order, Jackson filed an amended complaint providing more detail on the remaining Count II claim (the Massachusetts FDCPA claim) as well as Counts IV and VI. Count VI was amended to apply only to the 2012 foreclosure. In July 2013, the court, as recorded in the text orders on the docket, dismissed Count I as to Harmon full-stop and as to Bank of America, Capital One, and ING "except insofar as it [sought] a declaratory judgment that the 2008 foreclosure [was] void"; Counts II and IV; and Count VI as to Bank of America and Harmon -- all "for the reasons set forth in the record of today's hearing." In doing so, the court resolved all claims against Harmon. Later in January 2014, the court granted summary judgment as to Count I in favor of Jackson, voiding the 2008 foreclosure and resolving the final claim against Bank of America.

Alongside the adversary proceeding was a parallel proceeding related to Capital One's $219,536.86 claim in Jackson's reopened bankruptcy case for monies owed related to the property. In December 2013, the bankruptcy court ruled that Jackson had failed to provide substantial evidence to rebut the prima facie

validity of Capital One's proof of claim, amended to $295,064.22, except as to whether and how much it should be reduced to reflect the time that she did not live at the property after the 2008 foreclosure. The court also consolidated that claim objection with the ongoing adversary proceeding. In October 2014, Capital One sought to file another amended claim in the amount of $246,242.22, excluding the accruals from Jackson's vacancy. But Jackson objected, and the court struck the claim.

In June 2014, the court granted summary judgment as to Count VI in favor of Capital One and ING, resolving the final claims against them, and denied Jackson's cross-motion for summary judgment.

In July 2015, the bankruptcy court held a one-day bench trial on the two remaining disputed issues: (1) whether and by what amount Capital One's claim against Jackson's estate should be reduced to reflect the time that she was not living at the property; and (2) whether P&G is liable under Counts V and VI of Jackson's amended complaint. At the close of evidence, the parties agreed to concurrently file post-trial briefs in October 2015. Both Capital One and P&G filed their briefs the day that they were due, but less than an hour before midnight, Jackson requested a two-week extension of time to file her brief because her counsel had been hospitalized for the last two weeks. Both Capital One and P&G opposed the extension, noting that Jackson's counsel had

made numerous filings in other cases during that same period and that an extension would prejudice them. The court denied Jackson's motion. Nevertheless, nearly three weeks later, Jackson filed a post-trial brief accompanied by a motion to file nunc pro tunc, which the court denied in November 2015.

Jackson also moved to strike two attachments to Capital One's brief, namely a chart of escrow payments that accrued from the purported date of her last payment in February 2018 to the date her case was reopened in December 2012, and a schedule of the LIBOR history during that period as pulled from a private website. In November 2015, the court denied the motion.

In February 2016, the bankruptcy court issued a written ruling finding that Capital One's claim against Jackson's estate for monies owed related to the property was $246,242.22, exclusive of the interest, escrow payments, and late fees that accrued during the time she spent living outside the property, and that P&G's letters to Jackson violated the discharge injunction and the Massachusetts FDCPA, Mass Gen. Laws Ann. ch. 93, § 49. The court further found that P&G was not liable for deceit and misrepresentation or for wrongful foreclosure and breach of contract. In July 2016, after a further evidentiary hearing, the court issued a written ruling assessing damages against P&G in the amount of $17,994.

Jackson timely appealed to the Bankruptcy Appellate Panel ("BAP"), contesting at least thirteen of the bankruptcy court's orders, a "transcript," and unspecified "adverse ruling[s]." The BAP affirmed in all respects. Jackson v. ING Bank (In re Jackson), BAP NO. MB 16-046, 2017 WL 3822869 (B.A.P. 1st Cir. Aug. 23, 2017). This timely second-tier appeal followed. We have jurisdiction under 28 U.S.C. § 158(d)(1).

## II.

We focus on the bankruptcy court's decision, reviewing its factual findings for clear error and its legal conclusions de novo. See Insite Corp., Inc. v. Walsh Constr. Co. P. R. (In re Insite Corp., Inc.), 906 F.3d 138, 145 (1st Cir. 2018) (quotation marks and citation omitted). While we accord no special deference to the BAP's determinations, we "nevertheless pay great attention to the considered opinion of the three experienced bankruptcy judges who sit on the BAP." See Mission Prod. Holdings, Inc. v. Old Cold, LLC (In re Old Cold LLC), 879 F.3d 376, 383 & n.2 (1st Cir. 2018). To the extent we find any error, we consider whether it was harmless. See Fed. R. Civ. P. 61; Fed. R. Bankr. P. 9005.

We also consider whether any arguments have been forfeited -- "the failure to make the timely assertion of a right" -- or waived -- "the intentional relinquishment or abandonment of a known right." United States v. Cezaire, 939 F.3d 336, 339 n.2

- 9 -

(1st Cir. 2019) (alteration omitted) (internal quotation marks omitted) (citations omitted) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017)). Forfeited claims are reviewed only for plain error, see Redondo Const. Corp. v. P.R. Highway & Transport. Auth. (In re Redondo Const. Corp.), 678 F.3d 115, 121 (1st Cir. 2012), while waived claims generally merit no consideration, see United States v. Goodhue, 486 F.3d 52, 55 (1st Cir. 2007).

Jackson challenges the following orders of the bankruptcy court: (1) the May and July 2013 orders dismissing all of her claims against Harmon and most of her claims against Bank of America, Capital One, and ING; (2) the December 2013 order insofar as it overruled most of her objections to Capital One's proof of claim; (3) the June 2014 order granting Capital One and ING's motion for summary judgment and denying her cross-motion; (4) unspecified "adverse evidentiary rulings" at the July 2015 trial; (5) the October and November 2015 orders denying her an extension of time and leave to file nunc pro tunc her post-trial brief; (6) the November 2015 order denying her motion to strike two of the exhibits to Capital One's brief; (7) the February 2016 decision insofar as it valued Capital One's claim against her estate at $246,242.22; (8) the same decision insofar as it found that P&G was not liable for deceit and misrepresentation; (9) the same decision insofar as it found that P&G was not liable for

- 10 -

wrongful foreclosure or breach of contract; and (10) the July 2016 order insofar as it awarded only $17,994 in damages against P&G. We address these challenges seriatim.

**A.**

As to the May and July 2013 orders dismissing most of Jackson's claims, we need not delve too deep. Jackson has waived any challenge to those orders by failing to properly develop the record on appeal and her argument for reversal.

The BAP declined to review this challenge because Jackson did not provide the transcripts of the hearings at which the claims at issue were orally dismissed, as was required under Fed. R. Bankr. P. 8009. Although Jackson attempted to supplement the record with the July 2013 transcript, she only did so two weeks after oral argument. The BAP denied her request, commenting that it "would be unfairly prejudicial to the appellee(s) and would reward the appellant for its failure to comply with the applicable rules." The BAP also declined to exercise its discretion under Fed. R. Bankr. P. 8009(e) to correct that fatal omission itself. Before Jackson ordered the July 2013 transcript, neither transcript was available on the bankruptcy court's docket.

Jackson makes no mention in her opening brief of the BAP's decision not to review her challenge, to deny her motion to supplement the record with the July 2013 transcript, and to decline to correct the record itself. Only in reply did Jackson, while

conceding her procedural error, argue that we should overlook it. She principally argues that the BAP erred in denying her motion to supplement the record because any prejudice could have been mitigated by allowing for additional briefing, that this court reviews the bankruptcy court's decision "directly," and that "[i]n any event," we have the "relevant transcript" now so there is no good reason to "ignore" it, especially given the public policy in favor of deciding cases on the merits.

We need not, as some of the appellees urge, tarry on the "tricky" and "difficult" questions surrounding the effect of waiver on intermediate appeal in a bankruptcy proceeding. Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon), 922 F.3d 13, 17-19 (1st Cir. 2019); see City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 90-91 (1st Cir. 2011). Nor need we decide whether the BAP erred in denying Jackson's motion to supplement the record -- a decision that at least one circuit reviews for abuse of discretion, see, e.g., Lifemark Hosps., Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.), 304 F.3d 410, 433 & n.43 (5th Cir. 2002), but that she waived by raising it for the first time in reply, see Kane v. Town of Harpswell (In re Kane), 254 F.3d 325, 331 (1st Cir. 2001). Instead, we will accept, for purposes of this case, Jackson's invitation to treat her arguments as if they were on direct appeal. In doing so, we comfortably rely on familiar rules of waiver.

- 12 -

To start, other than including a barebones challenge to the May and July 2013 orders in her opening brief's restatement of the issues on appeal, Jackson offers no further discussion on any of the claims that were dismissed apart from Count III.  She presents no argument whatsoever as to how the bankruptcy court erred in dismissing those claims.  The mere mention of a challenge suffices only to waive it.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); see, e.g., Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co., 954 F.3d 397, 407-08 (1st Cir. 2020) (deeming waived an argument against dismissal of a claim because appellant only "mention[ed] in its opening brief's statement of the case that it was seeking appellate review of the dismissal" and "did not discuss this elsewhere in its briefs"); see generally Fed. R. App. P. 6(b)(1), 28(a)(8).

Furthermore, the reasons for the bankruptcy court's dismissal of Count III can only be found in the May 2013 transcript, which the bankruptcy court's docket reflects that Jackson has not ordered and which she has not at any stage sought to include in the record.  It is well-established that "[p]arties seeking appellate review must furnish the court with the raw materials necessary to the due performance of the appellate task." Campos-Orrego v. Rivera, 175 F.3d 89, 93 (1st Cir. 1999) (citing

- 13 -

Moore v. Murphy, 47 F.3d 8, 10-12 (1st Cir. 1995)).  Accordingly, "it is the appellant who must bear the brunt of an insufficient record on appeal" if an examination of the existing record "proves inconclusive."  Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987).[1]

Jackson postulates that the bankruptcy court "appears to have concluded" that Count III was subject to dismissal for want of detrimental reliance, but this "appears" to be nothing more than mere speculation based on how the bankruptcy court assessed in its February 2016 decision her separate deceit and misrepresentation claim against P&G as alleged in Count V.  Because Jackson has not pointed to, and we cannot discern, anything in the record or the July 2013 transcript that enables us to confidently say why the bankruptcy court dismissed the claim, we cannot attribute error to its reasoning.  Cf. Rodríguez v. Señor Frog's de la Isla, Inc., 642 F.3d 28, 37 (1st Cir. 2011) (finding appellant "cannot prevail" on claim that trial judge gave erroneous jury instructions because it failed to meet the "basic requirement" of providing a transcript of the instructions) (citing Campos-Orrego, 175 F.3d at 94; Moore, 47 F.3d at 10-12); In re Abijoe

_____

[1] Although applications of this doctrine often hinge on Fed. R. App. P. 10, which does not apply to bankruptcy appeals per Fed. R. App. P. 6(b)(1)(A), the relevant bankruptcy rules are no different in this respect.  See In re Abijoe Realty Corp., 943 F.2d 121, 123 n.1 (1st Cir. 1991); see generally Fed. R. App. P. 6(b)(2)(B); Fed. R. Bankr. P. 8009(a)(1) & (4), (b)(1); see also Fed. R. Bankr. P. 8009 advisory committee note to 2014 amendment (noting that "[t]his rule is derived from" Fed. R. App. P. 10).

- 14 -

Realty Corp., 943 F.2d 121, 127-28 (1st Cir. 1991) (finding that "[w]ithout a transcript," it was "impossible" to determine whether the bankruptcy court denied appellants the right to present evidence at the dismissal hearing).

**B.**

As to the December 2013 order overruling most of Jackson's objections to Capital One's proof of claim, Jackson again waived her challenge by making little more than cursory mention of it in her opening brief. See Zannino, 895 F.2d at 17.

**C.**

As to the June 2014 order granting Capital One and ING's motion for summary judgment and denying Jackson's cross-motion on her claims for breach of contract and wrongful foreclosure related to the 2012 attempt to foreclose, Jackson engages in sufficient argumentation to warrant our consideration. Our review is de novo. See Harris v. Scarcelli (In re Oak Knoll Assocs., L.P.), 835 F.3d 24, 28-29 (1st Cir. 2016). Nevertheless, her challenge fails on the merits.

The claims at issue (and as alleged in Count VI of the amended complaint) maintained that Capital One and ING's failure to provide Jackson certain notices during the 2012 commencement of foreclosure constituted a breach of the promissory note and mortgage contract and a wrongful foreclosure in violation of Mass. Gen. Laws Ann. ch. 244, § 35A. The bankruptcy court concluded

- 15 -

that Jackson did not raise a trialworthy issue of fact as to whether she was entitled to any remedy because of the alleged violations. The court noted that in U.S. Bank National Ass'n v. Schumacher, 467 Mass. 421 (2014), the Supreme Judicial Court ruled that the pre-foreclosure remedy for a violation of § 35A was at best an injunction and issuance of a compliance notice and a new cure period. It then concluded that Jackson was functionally already receiving an injunction by virtue of the automatic stay, that a declaratory judgment entitling her to a new notice would be futile because the stay would prohibit issuance of the notice, and that a new notice would not be warranted if she cured her default pursuant to 11 U.S.C. § 1322(b)(5). The court also found that Jackson failed to show that she would be entitled to damages on the breach of contract claim.

Jackson now raises two claims of error, neither of which are convincing. She stresses that the bankruptcy court "did not have the benefit of" the Supreme Judicial Court's decision in Pinti v. Emigrant Mortgage Co., Inc., 472 Mass. 226 (2015). But the rule pronounced in Pinti is prospective only and was issued after the bankruptcy court decided this issue. Id. at 243. Even if Pinti's reach extended to this case, see Galvin v. U.S. Bank, N.A., 852 F.3d 146, 157 n.10 (1st Cir. 2017) (citing Aurora Loan Servs., LLC v. Murphy, 88 Mass. App. Ct. 726, 731 (2015)), it is not clear how it would operate to save Jackson from summary judgment. Pinti

- 16 -

simply stood for the position that the failure to strictly comply with the notice of default provisions in paragraph 22 of a Massachusetts mortgage contract voids an attendant foreclosure. 472 Mass. at 227, 242. Because the attempted foreclosure in 2012 was just that -- an attempt -- there was nothing to void.

What is confusing is that Jackson acknowledges all of this, so it is not clear exactly what she is arguing. She seems to think that Pinti should inform our view of whether there was a breach in this case, which erroneously suggests that the bankruptcy court's decision turned on her failure to show a breach as opposed to damages. Jackson also appears to be under the impression that the operative foreclosure was the one in 2008 even though her amended complaint abandoned any such claim by focusing Count VI solely on the 2012 attempted foreclosure, as the bankruptcy court correctly noted. See Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) ("An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and no longer performs any function in the case." (internal quotation marks and citations omitted)); see generally Fed. R. Civ. P. 15; Fed. R. Bankr. P. 7015.

Jackson also contends that the Move Out Agreement was based on mutual errors of law and fact and therefore cannot be a bar to damages. This argument is irrelevant, and doubly so. For one, it is irrelevant because the bankruptcy court's analysis did

not hinge on the Move Out Agreement, as the BAP rightly noted. And as Capital One has argued (in what is perhaps a bit of a concession to Jackson), the Move Out Agreement is irrelevant to the 2012 foreclosure action -- the only such action at issue in Count VI.

**D.**

As to any "adverse evidentiary rulings" at the July 2015 trial, we have no difficulty finding that Jackson waived this argument by failing to develop it. See Zannino, 895 F.2d at 17.[2]

**E.**

As to the October and November 2015 orders denying Jackson an extension of time to file her post-trial brief and leave to file it nunc pro tunc, our review is for abuse of discretion. Cf. Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 3–4 (1st Cir. 2001).

We find no abuse. Jackson inexplicably waited until less than an hour before the long-settled concurrent filing deadline before she alerted the bankruptcy court to any issue that she had with meeting it. As other parties had already filed their

---

[2] We note that Jackson appears to have taken issue with how the bankruptcy court weighed the evidence in determining Capital One's claim, arguing that "[t]he bankruptcy court erred in its evidentiary rulings at trial in finding a higher balance due." That is something quite different from what is commonly understood as an "evidentiary ruling," to wit, a decision whether to admit or exclude certain evidence.

briefs, the court's acceptance of a belated brief by Jackson would have granted her an unfair advantage. That her counsel may have been hospitalized does not move the needle in view of all the circumstances, including the fact that he made numerous filings during the period of his reported hospitalization. Cf. Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 117-18 (1st Cir. 2005) (finding no abuse of discretion in denial of third motion for extension of time when ill counsel took a deposition but did not "make the small additional effort" of filing a motion for extension of time).

Jackson provided no better reason to excuse her belated filing three weeks after the deadline had passed, which would only have compounded the prejudice to the other parties. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993) (noting that bankruptcy courts must consider "the danger of prejudice," "the length of the delay," and "the reason for the delay" when deciding whether to permit late filings for "excusable neglect") (citing Fed. R. Bankr. P. 9006(b)(1)).

Moreover, Jackson's post-trial brief, which contained less than two pages of argumentation, appears to have been little more than an attempt to relitigate an issue from the main case. Her brief focused on the principal balance due on her loan on the date she retook possession of the property and seemed to argue that anything in excess of that amount was necessarily an accrual

from the period she was vacant from the property. But as the bankruptcy court noted, the purpose of the trial with respect to the proof of claim was to determine whether Capital One was owed any accruals from the vacancy period and, if not, by what amount the claim should be reduced. The principal balance amount was settled at the proof-of-claim stage in the main case, and any objections to that amount should have been offered then and there. Jackson did not offer any.

In view of the fact that the focus of this issue at trial was solely to determine the accrual amount, the principal balance at the time that Jackson returned to the property was irrelevant, as it would not have affected any accruals that had accumulated earlier. Furthermore, her benchmark for Capital One's claim inexplicably excluded accruals that accumulated between her repossession of the property and the reopening of her bankruptcy case. Accordingly, the denials of Jackson's motions regarding her post-trial briefs were not an abuse of the court's discretion.

**F.**

As to the November 2015 order denying Jackson's motion to strike, we again review her preserved arguments for abuse of discretion. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 899 F.3d 1, 17 (1st Cir. 2018). Again, we find none.

The bankruptcy court denied the motion on grounds that the chart of escrow payments summarized information that was

admitted into evidence and may well have been admissible itself under Fed. R. Evid. 1006, and that it could take judicial notice of the LIBOR rate history.

Jackson contends that the bankruptcy court could not rely on the escrow payments chart simply because the information it contained was admitted at trial or under the theory that the chart itself may have been admissible. But as noted by the BAP, Jackson identifies no prejudicial effect that consideration of the escrow payments chart may have had on the bankruptcy court's evaluation of Capital One's claim. Consequently, Jackson waived that argument and we are left to conclude that any conceivable error was harmless. See Clukey v. Town of Camden, 894 F.3d 25, 35 (1st Cir. 2018).

Similarly, Jackson's complaint that the LIBOR schedule was not presented at trial gets her nowhere. Courts may take judicial notice at any stage of the proceeding, see Fed. R. Evid. 201(d), and prevailing interest rates are a proper subject of judicial notice, see Transorient Navigators Co., S.A. v. M/S Southwind, 788 F.2d 288, 293 (5th Cir. 1986). Jackson does not dispute any of this; rather she makes two narrower arguments. She asserts that she was denied the opportunity to be heard because the bankruptcy court did not provide advance notice of its intent to take judicial notice. But Jackson, in her own motion to strike, presaged that possibility and explicitly argued against it. Nor

- 21 -

does the record reflect that she ever requested to be heard on this issue before or after the court's ruling.  See Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988) ("Absent a request under [Fed. R. Evid.] 201(e) for a hearing before the district court, the fact that the court took judicial notice of a fact or the tenor of the notice taken is not grounds for later appeal.").

Jackson next argues that the bankruptcy court should have stated the source of its information and why it believed the information was accurate.  In denying the motion to strike the schedule, the court appears to have demonstrated at least a willingness to rely on the LIBOR schedule that was provided by Capital One.  It is certainly questionable whether the court should have relied on that information, which was drawn from a private website that expressly disclaimed the information's accuracy.  The problem for Jackson, again, is that she makes no argument at all as to how any potential inaccuracies in the schedule prejudiced her.  Therefore, any error was harmless.  See Clukey, 894 F.3d at 35.

**G.**

As to the February 2016 evaluation of Capital One's claim against Jackson's estate, we review the bankruptcy court's factual finding for clear error.  See In re Insite, 906 F.3d at 145.  We find none here.

- 22 -

The bankruptcy court agreed with Jackson that the interest, escrow, and late fees that accrued in the period during which Jackson had vacated the property should be excluded from Capital One's claim. One purpose of the trial was to calculate that amount. Based on documents submitted by both parties and accountings that Capital One presented at trial, the court determined that the proper deduction was $48,822, which reduced the claim to $246,242.22. Despite ample opportunity, Jackson presented the bankruptcy court with no alternative calculation for the reduction. She did not submit any document or offer any testimony that laid out an alternative method of accounting, she waived her closing argument, and she failed to timely file a post-trial brief.

Now, before us, Jackson serves a smattering of confused arguments. She claims that the bankruptcy court improperly shifted the burden of proof, apparently by failing to require Capital One to produce evidence in support of its claim. Jackson seems to think that Capital One bore the burden at trial to prove its claim all over again, as opposed simply to proving that it was entitled to the accruals during the vacancy period and, if so, in what amount. As earlier explained, Jackson is under the wrong impression. The portion of the bankruptcy court's decision that she quotes with skepticism was simply an acknowledgment that Capital One chose to abandon any claim to accruals from the vacancy

- 23 -

period rather than endeavoring to prove that part of its claim at trial. This was unsurprising; Capital One had earlier attempted to amend its claim a second time to exclude those accruals, but that effort was thwarted by Jackson herself.

Jackson further complains that Capital One did not present a live witness at trial to authenticate the accounting documents that were admitted into evidence and to validate its calculations as derived from those documents. This is perplexing. The purpose of authentication is to assist in gatekeeping proffered evidence, see United States v. Savarese, 686 F.3d 1, 11 (1st Cir. 2012), not in lending additional credence to evidence already admitted, see Asociación de Periodistas de P.R. v. Mueller, 680 F.3d 70, 79 (1st Cir. 2012). Jackson also offers no support for her contention that a court cannot deploy simple arithmetic to accounting figures that are in evidence in order to calculate a credit. These arguments, even if they were not waived for lack of development, fall short of identifying any reversible error.

**H.**

As to the February 2016 decision to find P&G not liable for deceit and misrepresentation, our review for preserved arguments is de novo. See In re Insite, 906 F.3d at 145. We find no error here, either.

The bankruptcy court concluded that Jackson's deceit and misrepresentation claim failed because she failed to show that she

had detrimentally relied on P&G's January 2012 letter.  Jackson argues that detrimental reliance was not an essential element of her claim and that, in any case, she did detrimentally rely on the letter.

The BAP found that Jackson failed to preserve her first argument by failing to raise it before the bankruptcy court. Jackson does not dispute that she failed to raise it below but argues that she should not be held at fault because "both sides" took the issue "for granted."  But it was Jackson who initiated the adversary proceeding; she carried the burden of proving all of the elements of her claims.  If she believed that the bankruptcy court erred in requiring her to show detrimental reliance, she, not P&G, was responsible for bringing that to the court's attention.  Cf. LNC Invs., Inc. v. First Fid. Bank, N.A. N.J., 173 F.3d 454, 461 n.5 (2d Cir. 1999) (declining to consider argument that reliance was not an element of a claim as unpreserved).

As Jackson's claim was forfeited, we review for plain error.  In support of her first argument, Jackson cites our opinion in Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26 (1st Cir. 1998) [hereinafter MSL].  There, we noted the "general rule" that without the "necessary element" of detrimental reliance, there is no negligent misrepresentation claim under Massachusetts law.  Id. at 41 (citing Romanoff v. Balcom, 4 Mass. App. Ct. 768, 769 (1976)).  But we also recognized

- 25 -

an "exception" to this rule: that "[i]n the absence of detrimental reliance, a party still may be held liable under Massachusetts law for misrepresentation of information negligently supplied for the guidance of others." Id. (citing Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 587 (1996)). Jackson, quoting this language, says she falls within that exception.

The BAP observed that Jackson engaged in cherry-picking quotes. Indeed, we went on to note in MSL that to fall within the exception, a plaintiff would have to show "loss caused to [third persons] by [the recipient's] justifiable reliance upon the information." Id. (quoting Fox, 41 Mass. App. Ct. at 587 (alterations in original) (quoting Restatement (Second) Torts § 552(1) (1977))). Jackson in turn suggests that we distorted Fox with our alterations to that quote, arguing that it "makes no sense" for a third person to have a cause of action against the originator of a misrepresentation but not the transmitter.

To clear up any confusion, the point that we were making in MSL was simply that a plaintiff could sue the originator of a negligent misrepresentation even if the plaintiff did not rely on the misrepresentation, so long as some third person justifiably relied on it and the plaintiff suffered harm as a result. See id. (finding no fraudulent or negligent misrepresentation where plaintiff did not plead that it or anyone else relied on the false information nor that it suffered any harm from the information's

- 26 -

transmittal). As the BAP noted, Jackson does not point to any third party who justifiably relied on P&G's misrepresentation, so she cannot take advantage of the exception articulated in MSL. Still, to the extent there was any error, we cannot say that it was "clear or obvious." Nat'l Fed'n of the Blind v. Container Store, Inc., 904 F.3d 70, 86 (1st Cir. 2018) (citation omitted) (internal quotation marks omitted).

Jackson argues in the alternative that she did in fact detrimentally rely on P&G's letter when she incurred costs filing a June 2012 civil action in Superior Court against ING, the purported mortgagee named in the letter, as opposed to Countrywide, the actual mortgagee, as well as when she reopened this bankruptcy case and converted it to a chapter 13 case. Again, as noted by the BAP, Jackson failed to preserve this argument.

We find no error that could be considered "clear or obvious." Nat'l Fed'n of the Blind, 904 F.3d at 86. Jackson has not shown that she incurred any greater expense than she otherwise would have but for P&G's misrepresentation. Jackson's amended complaint alleged that she filed the Superior Court action "[i]n order to stop [P&G] from foreclosing." It is not clear why Jackson would have forsaken her attempt to obtain an injunction had P&G accurately stated the holder of the mortgage in its letter. It is not even clear that Jackson would have avoided incurring costs to serve P&G in that proceeding, as her beef with P&G went beyond the

misrepresentation and included allegations that the letter itself violated the discharge injunction. The same is true for Jackson's decision to move to reopen and convert her bankruptcy case.

## I.

As to the February 2016 decision to find P&G not liable for wrongful foreclosure or breach of contract, our review is de novo. See In re Insite, 906 F.3d at 145. Again, we find no error.

Jackson lodges a cursory challenge to the bankruptcy court's no-liability finding on her wrongful foreclosure and breach of contract claims against P&G. The court stated that it reached that conclusion for similar reasons that it granted summary judgment in favor of Capital One and ING on the related claims against them. First, the court, citing Nash v. GMAC Mortg., LLC, No. CA 10-493 S, 2011 WL 2470645, at *11 (D.R.I. 2011), report and recommendation adopted, No. CA 10-493 S, 2011 WL 2469849 (D.R.I. 2011), found that Jackson's wrongful foreclosure claim failed because the 2012 foreclosure was not completed -- an element of the claim. Second, it found that Jackson's breach of contract claim, premised on a violation of Mass. Gen. Laws Ann. ch. 244, § 35A, was not ripe for adjudication.

Jackson cites generally the Supreme Judicial Court's opinion in U.S. Bank National Ass'n v. Ibanez, 458 Mass. 637 (2011), without even a pincite to direct our attention to any relevant part of the opinion. The part of the opinion that she

seems to rely on simply states that a foreclosure executed pursuant to a statutory power of sale "goes forward unless the mortgagor files an action and obtains a court order enjoining the foreclosure." Id. at 646 (citing Beaton v. Land Ct., 367 Mass. 385, 393 (1975)). Jackson points to the fact that a mortgagor can file a lawsuit to enjoin a foreclosure for the proposition that "[a] threatened foreclosure is wrongful even if it is not completed," that "[i]n doing so, a mortgagor suffers damages," and that therefore there is no bar to awarding her damages.

Jackson's argument is flawed. It is possible that the bankruptcy court may have conflated the reasons it gave. But the part of Ibanez that she alludes to does not at all hold, or even imply, that a completed foreclosure is not a prerequisite to a wrongful foreclosure claim in Massachusetts. Nor does it adopt the position that the costs incurred in filing a lawsuit suffice to show damages for purposes of a breach of contract claim. If anything, it suggests the contrary by noting that a mortgagor can file a lawsuit to obtain an injunction enjoining the foreclosure. We see nothing in Ibanez that should disturb the bankruptcy court's conclusion, if not its reasoning. To the extent that Jackson's argument is not waived for failure to develop it, it fails for the simple fact that she has not pointed to any error.

**J.**

As to the July 2016 decision to exclude certain costs from Jackson's damages award against P&G, Jackson again waived her challenge. The BAP declined to evaluate this challenge because Jackson supplied an incomplete record, including neither the transcript of the relevant evidentiary hearing nor certain documents directly implicated in her calculation of damages. For the reasons already discussed, Jackson's procedural missteps tie our hands.

**III.**

For the foregoing reasons, we **affirm** the decision of the BAP affirming the bankruptcy court in all respects.